Is Council present for the next case? Womack v. MSPB? Please come forward. Okay, this is case appeal number 19-17-13, Womack v. MSPB. Mr. Fischer, Mr. Fischer, before you start, I observe that you've waited the division of your time for rebuttal. You understand that new issues can't be raised on rebuttal. I understand, Your Honor. Okay. Good morning, Your Honors. Morris Fischer for the appellant. The reason I did ask for that might be a drop of an unusual format is because I think the case is very straightforward. It boils down to the opinion in Scharf versus the Department of the Air Force, which basically says that it is not necessary for a judge, for an administrative judge, to find that the appellant is intentionally deceived about his retirement options. That all that needs to happen is that there has to be a statement. The statement has to be misleading. The guy has to rely on it. That's it. Well, he was given choices. He was given choices. That's true. And he chose to retire. Well, he chose... And a voluntary retirement is not appealable. The only thing that's an issue in this case is not whether he retired. That's conceded that he did voluntarily retire. The issue is for the months of July to December. His supervisor admits, page 61 to page 62, I'm sorry, 99 to 100, he admits that Mr. Womack offered to do the job on a TDY to the end of the year. He admitted that. He offered to do that. He said, no, that won't work. We need somebody permanent. They didn't get anybody permanent. Had... And he also admitted, the supervisor also admitted, that Mr. Womack could have been one of those people. What they did was they used TDYers until the end of the year, from July to the end of the year. That was admitted. The supervisor, Mr. Medina, fully admitted Mr. Womack could have been one of those people. So he tricked them. He... Now, maybe even if the court believes that there was a need for this permanent position, position was never advertised. The judge clarified that, pages 99 and 100 in the appendix. In the end, the judge specifically asked him two questions. He asked him, number one, was the position ever advertised prior to Mr. Womack? No. Was it advertised afterward? Do you know if it was ever filled? And Mr. Medina goes into a diatribe of what happened in 2017. Something happened in 2017. Could you point out in your blue brief where you claim that Mr. Womack was tricked? Sounds to me like a new issue. I don't know it's a new issue. It's... It's a new issue being argued. I don't think it's... I don't think this is a new issue at all. Well, could you point out the word trick in... I may not have used the word... Something approximating that. I may not have used the actual word tricked, but he was... May I say it right in the statement of the case? He knew page three and four. He knew the... The Glinko position was vacant for well over a year. He asked appellant to fill it. He made no effort to find anybody else when he was not permitted to take the thing on a TDY position. Other employees doing the TDY simply did the subject Glinko position. Mr. Fisher, let me ask you. As I understand it, what the... had to be determined here was whether there was a legitimate management reason for the reassignment. That's what our Ketterer and Umsher cases in the Merit Systems Protection Board. And the A.J. in the board I believe found that the reasons for the reassignment were legitimate because of number one, there was a need at Glinko. And number two, that as capable as he was and as good a record as he had, the fact was that Mr. Womack had been in this at Fort Benning for 15 years and that they needed someone who had more hands-on in the field experience to be teaching this advanced class. And the A.J. said those reasons were established. Now, for that reason there was no unreasonable or improper reassignment, the A.J. said. Okay? That was what he said. Now, the whole point, though, about the working until December 31st as opposed to, I guess it was July 31st? Or June 31st. June 31st. That's a detail of his retirement. That doesn't relate to whether the basic retirement decision which he made was coerced because substantial evidence supports and you don't really challenge the two points about the legitimacy of the reassignment. We challenge the legitimacy. There is something called need. And then there's something called need. And then there's something called need to the point where I'm going to do something about it. Okay? Infrastructure. He could have, under our case law, I think, I can't recall the exact case, but as I understand it, our jurisprudence says that if he was unhappy about this period between end of June and the end of December, he could have refused and he could have stayed there. And he could have refused and then he would have been fired. But he chose not to do that. He was faced with the decision of leaving at the end of June. Didn't they extend it to July? I don't recall. Well, okay. But anyway, he was faced with the choice of leaving at the end of June or the end of July or saying, no, I'm not going to do that and being fired. And we've said once it was established that there was a legitimate reason to reassign him, what difference does this make? Why do we, why does the court accept and why does the judge accept that there was a legitimate reason to reassign him to the point where someone had to be hired at Glyneco? Because nobody was on a permanent basis. And remember, Judge, this was the lowest form of training because their whole point was- It's for incoming agents. Right. Right. So their claim is we couldn't have gotten anybody in the United States to do this job. The only person we could have gotten is Mr. Womack, which there's nothing on an email, a vacancy announcement, a shred of paper, nothing that supports that. And that he was deficient in the first place is on a double hearsay, which is impossible to rebut from one guy who says he told, who Medina says someone told his liaison- Yeah, but the AJ, the AJ accepted the Medina testimony and you challenge it, which is fair enough on appeal. But the AJ accepted Mr. Medina's testimony and I can't say that substantial evidence doesn't support that. The fact that they just never hired anybody for that job. The fact that they told him, yes, this is an incredible need here. And they just, I'm sorry, guy. We just didn't do it. I, I, I, I think the case- That isn't proof of misrepresentation though. It's proof of a- The fact that they didn't hire anyone. There are various reasons why they didn't hire someone. They couldn't, suddenly there were financial restrictions. There was sequestration and the burden is on Mr. Womack. But none of that, none of that was, all of that was asked about at the hearing. The judge himself asked that question and it didn't get any satisfactory response. If you look on page 100 of the, of the appendix. So it, and again, it, it, it doesn't have to be an intentional thing. The, the question at the end of the day was, this guy could have been one of the people to do this at the end of the year. There's no reason why he shouldn't have been. And you're saying this all came out in the question with respect to the question of when he would actually leave the job. Exactly. That's right. Nothing further. Thank you. Ms. Ledger. May it please the court. The administrative judge correctly found that Petitioner did not meet his burden to establish that his retirement was involuntary. Therefore, the To overcome the presumption that his retirement was voluntary, Petitioner must show either that it was a result of agency misinformation and deception, or that it was coerced by the agency. And to establish coercion, Petitioner must show three things. First, the agency effectively imposed the terms of the resignation. Second, Petitioner had no realistic alternative but to resign. And third, the resignation was the result of improper acts by the agency. But isn't there something curious? You can't dig it out from the record. But here you take the person whose entire career has apparently been trouble-free and superior, at least, in the last few months. You say, all right, pick up yourself or your family or whatever, go four hours away, where the way you can really, since you're due to retire anyway in December, that you can really establish a presence or make a significant contribution. It doesn't seem that there's something very strange about employee relations and management that, again, it doesn't show up in this record. Do you have a theory about all this? Well, from the record, it's clear that Mr. Medina testified that he did respect Petitioner's work and his career. And that was one of the reasons he wanted to transfer him to this position where they needed an experienced instructor. And also because of the complaints that had been going on the agency about his extended tenure in his current position, which was unprecedented. Most other instructors there served for five years, and he had been there for 15. So there was pressure to move him back into the field or to another position. However, I would note that the legitimacy of the reassignment is not being challenged in this case. If Petitioner wanted to challenge that, he should have refused to resign and then allowed the agency to fire him, then he could have appealed that removal decision. So the only thing he's challenging here is whether or not the change in the retirement date rendered his retirement involuntary. And that's Petitioner's burden to establish that. And he simply hasn't produced convincing evidence that the fact that the date was moved up from his desired date of December to eventually July means that he had no choice but to resign. And actually, the agency showed flexibility in assigning his retirement date by agreeing to extend the date to July from June, which was their original choice for him to retire at his request. So there's simply no evidence of coercion here in the selection of the retirement date. Does an employee have an absolute right to determine a retirement date? I mean, in general, employees are allowed to choose their retirement dates. However, there is a standard of reasonableness. In this case... When did this begin? In November? Well, the reassignment was set to take place, I believe, by March. So just reasonably looking at tying the retirement date to the date of the reassignment, extending it out nine more months to December is not consistent with the agency's need to fill that position with a permanent employee. I think this was February 12th, and he said, I elect to resign in December. Right. So the letter was... A half month's delay. Yeah. So the reassignment would have taken place within 30 to 90 days after February 12th. So to be consistent with that time frame, June was the latest it could have been, and they actually did extend it further than that at his request. And the agency showed that they had sound management reasons for selecting the retirement date in June. Contrary to petitioners' arguments, there's no evidence... The record doesn't establish that the agency never advertised the position. In fact, the petitioner relies on, which is on page 99 of the appendix, is Medina's testimony that the position wasn't advertised prior to their decision to reassign the petitioner to that position. He doesn't say anything about it not being advertised after he had declined the position. So that is clearly not enough to meet the burden to establish that. Was the argument about deception, trickery elucidated in the blue brief? Well, he does argue that the position was a sham, but he certainly doesn't cite evidence to support that. So plausibly, it could have been included in his brief, yes, but our position is that he has not met his burden to establish that. The only evidence in the record is that Medina was asked at the hearing, what are you doing to fill this position now? And he said, we're continuing to use temporary instructors to fill it. That doesn't say the agency never tried to fill it. It doesn't say that they wanted to keep using temporary instructors or why they were using temporary instructors. So given the burdens in this case, petitioner just hasn't satisfied his burden to establish that the presumptively voluntary act of retiring was actually involuntary. As I stated, the agency had an operational need to permanently fill the FLETC position after petitioner had declined the transfer and an extended detail by an employee who had already announced his retirement did not fulfill that need. And the lack of coercion in the selection of the retirement date is further demonstrated by the fact that the agency agreed to extend the retirement date by one month at petitioner's request. If petitioner did not wish to accept the assigned date, he was free to either reconsider his decision to retire, allow the agency to remove him, or reconsider his decision to accept the transfer and take the position. But instead, he chose to accept the retirement date in July and voluntarily retired. So because petitioner did not meet his burden to rebut the presumption that his retirement was voluntary, the MSPB lacked jurisdiction over this appeal. And if there are no further questions, I would ask that you affirm the board's decision and dismiss the appeal. All right, thank you, Mr. Levy. Okay, just a couple points to clarify the record here. First of all, page 99 or page 62 of the appendix, okay, where there's a question and answer. What he ended up doing over there was using the TDYs, and he says, yes. And on line nine, one of the people that could have been doing that in 2000, typo, it's supposed to say 16, was Mr. Womack, and he says, yes. Okay, so that's evidence that they didn't fill the position afterwards. Page 100 of the record, the judge says, asks him, before you left, he says, I know you've said you've been out of your position for about a year, retired. And this hearing was in October of 2018. Okay, so he was out of there certainly sometime in 2017. And before you left, had that position at Glynco been filled permanently? And the witness says, I'm not sure what they did, because in 2017, and he goes through a whole thing about what happened in 2017. Okay, that implies that in 2016, they didn't have the position filled. He would have said that. He would have said, yes, they filled the position in 2016. I think there's more than enough in the record to suggest that the position was not filled with a permanent person in 2016. That's just a fact. But does that make a difference, Mr. Fisher? Assume the agency, circumstances can change, assume the agency thought it had to, and the AHA found that based upon what had occurred prior to this dispute about the actual departure date, that it had made out its case. Judge Schultz, in the answer to that question, okay, is that had that been the case in 2016, Medina would have said so. He would have said that in that answer on page 100. He would have said, it wasn't filled in 2016 because of everything that you're suggesting. And in fact, in 2017, something happened. And that made the whole thing null anyway, in 2017. Had it been 2016, he would have said that. And he didn't. What is curious though, is that this whole question only came up when they were talking about, when are you going to retire? He had already said, I will retire. And you said at the beginning that it was a voluntary retirement. And this whole question only arose when they were discussing, all right, what date are you going to leave? And as Ms. Lederer said, he could have said, I'm not happy with this. I'm going to stay here. And he could have been fired and then challenged that. Our cases make that clear. And the cases have made that clear in circumstances which were much stronger, I think, than in this circumstances. Well, I mean, I don't know that you need such egregious circumstances. I mean, the question is, was it enough for him to have relied on the statement? And if he met that threshold, he doesn't need 20 people saying the same thing. He doesn't need, it's one thing. Did it cause the guy to retire five months before he wanted to? I think the answer to that is yes. Thank you. Thank you. Thank you both. Case is taken under submission. And that concludes this panel's arguments for this morning. All rise. The Honorable Court is adjourned until tomorrow morning at 10 o'clock a.m.